UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LILIAN GIANG,<br><br>Defendant | Criminal No. 23cr10062<br><br>Violations:<br><br>Counts One - Four:<br>Failure to Collect or Pay Over Taxes<br>(26 U.S.C. § 7202)<br><br>Count Five:<br>Mail Fraud<br>(18 U.S.C. § 1341)<br><br>Forfeiture Allegation:<br>(18 U.S.C. § 981(a)(1)(C) and<br>28 U.S.C. § 2461) |

## INDICTMENT

At all times relevant to this Indictment:

### General Allegations

1. Defendant LILIAN GIANG ("GIANG") lived in Massachusetts.

2. GIANG owned and operated a temporary employment agency under the name Able Temp Agency, Inc. ("Able Temp Agency") in Quincy, Massachusetts.

3. The term "temporary employment agency" refers to a business that provides temporary workers to client companies, ordinarily leased on a short-term basis. The client companies direct the day-to-day work activities of the temporary employees and pay fees to the temporary employment agency. The temporary employment agency handles the administrative and accounting tasks for the employees, including paying wages and state and federal taxes. The agency is also responsible for maintaining workers' compensation insurance for the employees.

4. The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury responsible for administering and enforcing federal tax laws.

5. Insurance Company 1 was a national insurance company that provided workers' compensation insurance policies. Insurance Company 2 administered Insurance Company 1's workers' compensation insurance policies.

Federal Tax Requirements

6. Federal tax laws required employers, including temporary employment agencies, to report all wages paid to employees and to pay over to the IRS all federal employment taxes. Employers were required to report and pay federal employment taxes by filing an IRS Form 941 four times per year, after each quarter ending March 31, June 30, September 30, and December 31.

7. The federal employment taxes due at the end of each quarter included: (a) employees' income taxes withheld from their wages and credited toward their federal income tax obligations, and (b) Federal Insurance Contributions Act ("FICA") taxes. FICA taxes consisted of Social Security taxes and Medicare taxes. For each employee, the employer was required to pay one-half of the applicable FICA taxes and withhold the other half from the employee's wages.

Failure to Collect and Pay Taxes

8. Between in or about 2015 and in or about 2019, GIANG provided temporary employees to multiple client companies through Able Temp Agency. The customers paid Able Temp Agency for each employee's work on an hourly basis.

9. GIANG used the payments from client companies to pay her temporary employees' wages. GIANG paid some Able Temp Agency employees by check, some by cash, and some by a combination of both.

10. GIANG caused IRS Forms 941 to be filed in the name of Able Temp Agency that were inaccurate in that they did not report the wages paid to employees in cash. GIANG and Able

Temp Agency thereby avoided paying the full amount of federal employment taxes due each quarter.

11. Between in or about 2015 and in or about 2019, GIANG and Able Temp Agency failed to report on IRS Forms 941 approximately $3,222,857 in wages paid to the temporary employees. By failing to accurately report her payroll, GIANG and Able Temp Agency avoided paying approximately $815,382 in federal employment taxes.

### Workers' Compensation Insurance

12. Massachusetts law required employers to obtain and maintain workers' compensation insurance so that employees who suffer work-related injuries may be compensated.

13. Employers obtained workers' compensation insurance by paying premiums to insurance carriers for a fixed period of insurance coverage (*i.e.*, one year).

14. The cost of workers' compensation insurance for any given year was based, in part, on the total wages of the employees. Employers were therefore required to provide the workers' compensation insurance carrier with estimates of their anticipated payroll during the upcoming policy term.

15. After the close of a policy term, the insurance carrier commonly conducted an "audit" of the employer's actual payroll during the policy term. During such audits, the employer was required to accurately report to the insurance carrier its actual payroll during the policy term, for example, by providing IRS Forms 941 for the previous four quarters.

### Scheme to Defraud Workers' Compensation Insurance Carriers

16. Between in or about 2015 and in or about 2019, GIANG and Able Temp Agency obtained a workers' compensation insurance policy through Insurance Company 1, with Insurance Company 2 administering the policy.

17. GIANG provided false information to Insurance Company 1 and Insurance Company 2, including false IRS Forms 941 that substantially underreported Able Temp Agency's payroll to its temporary employees. By underreporting payroll, GIANG was able to obtain a workers' compensation insurance policy from the insurers at a reduced cost.

18. Based on the false information GIANG provided, Insurance Company 2 mailed premium adjustment notices to GIANG and Able Temp Agency that reflected lower insurance premiums than were in fact owed.

19. Between in or about 2015 and in or about 2019, GIANG and Able Temp Agency underreported payroll by approximately $3,222,857, thereby evading payment of approximately $30,582 in workers' compensation insurance premiums.

## COUNTS ONE THROUGH FOUR
Failure to Collect or Pay Over Taxes
(26 U.S.C. § 7202)

The Grand Jury charges:

20. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 19 of this Indictment.

21. In or about 2017, in the District of Massachusetts and elsewhere, the defendant,

LILIAN GIANG,

a person required to collect, account for, and pay over any tax, willfully failed to collect, account for, and pay over to the Internal Revenue Service the federal employment taxes due and owing to the United States on behalf of Able Temp Agency, Inc. and its employees on or about the following:

| Count | IRS Tax Form | Year / Quarter | Date Received |
|---|---|---|---|
| 1 | Form 941 | 2017 / Q1 | 4/30/2017 |
| 2 | Form 941 | 2017 / Q2 | 7/31/2017 |
| 3 | Form 941 | 2017 / Q3 | 10/31/2017 |
| 4 | Form 941 | 2017 / Q4 | 1/31/2018 |

All in violation of Title 26, United States Code, Section 7202.

## COUNT FIVE
## Mail Fraud
## (18 U.S.C. § 1341)

The Grand Jury further charges:

22. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 19 of this Indictment.

23. On or about December 6, 2018, in the District of Massachusetts and elsewhere, the defendant,

## LILIAN GIANG,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did, for the purpose of executing and attempting to execute the scheme, knowingly cause to be delivered by mail and by any private and commercial interstate carrier according to the direction thereon, the following: Premium Adjustment Notice for workers' compensation policy period November 6, 2017 to November 6, 2018, mailed by Insurance Company 2 to Able Temp Agency at PO Box 692636, Quincy, MA 02269.

All in violation of Title 18, United States Code, Section 1341.

## MAIL FRAUD FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The Grand Jury further finds:

24. Upon conviction of the offense in violation of Title 18, United States Code, Section 1341, set forth in Count Five, the defendant,

LILIAN GIANG,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The property to be forfeited includes, but is not limited to, the following asset(s):

    a. A money judgment in an amount to be determined, to be entered in the form of a forfeiture money judgment;

25. If any of the property described in Paragraph 24, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;
    b. has been transferred or sold to, or deposited with, a third party;
    c. has been placed beyond the jurisdiction of the Court;
    d. has been substantially diminished in value; or
    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 24 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

*Michelle L. Horden*
FOREPERSON

_____
CHRISTOPHER J. MARKHAM
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS

District of Massachusetts: March __8__, 2023
Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK