UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LILIAN GIANG,<br><br>Defendant | Criminal No. 23-cr-10062-RGS |

**GOVERNMENT'S TRIAL BRIEF**

Defendant Lilian Giang is charged in an Indictment with failure to collect or pay over taxes, in violation of Title 26, United States Code, Section 7202 (Counts I-IV), and mail fraud, in violation of Title 18, United States Code, Section 1341 (Count V). Trial is scheduled to begin on April 8, 2024, and, depending on the nature of the defenses presented, the government expects the trial to last approximately one week. The government respectfully submits this trial brief to briefly summarize the allegations and evidence, the charges pending against the defendant and the legal elements thereof, and certain evidentiary issues that may arise during the trial.

I.   Summary of the Allegations and Anticipated Evidence

As alleged in the Indictment, between at least 2015 continuing through at least 2019, the defendant owned and operated a temporary employment agency named Able Temp Agency Inc. ("Able Temp Agency"). Ind. ¶ 2. As its owner and operator, the defendant was required to pay payroll taxes quarterly on all wages paid to Able Temp Agency's employees through the filing of an Internal Revenue Service ("IRS") Form 941. *Id.* ¶¶ 6-7. The defendant was also required to obtain workers' compensation for her employees annually, premiums for which were based, in part, on the total wages paid to Able Temp Agency's employees. *Id.* ¶¶ 12-15.

The Indictment alleges that defendant violated these legal requirements by misrepresenting her payroll both to the IRS and her workers' compensation insurance company. Between 2015 and 2019, Able Temp Agency provided temporary employees to multiple client companies, and those companies paid Able Temp Agency based on the number of hours worked by Able Temp Agency employees. *Id.* ¶ 8. The defendant then paid her employees based on the number of hours they worked; the defendant paid a portion of those wages via check and the remainder of their wages in cash. Id. ¶ 9. The defendant caused only the check payroll to be reported on Able Temp Agency's quarterly IRS Forms 941, which allowed her to avoid paying payroll taxes. *See, e.g.*, Ind. ¶ 11 ("Between in or about 2015 and in or about 2019, GIANG and Able Temp Agency failed to report on IRS Forms 941 approximately $3,222,857 in wages paid to the temporary employees"). The defendant also did not disclose her cash payroll to her workers' compensation insurance company, which allowed her to pay artificially-reduced insurance premiums on her workers' compensation policy. *See, e.g.*, Ind. ¶ 19 ("Between in or about 2015 and in or about 2019, GIANG and Able Temp Agency underreported payroll by approximately $3,222,857, thereby evading payment of approximately $30,582 in workers' compensation insurance premiums").

At trial the government anticipates proving these allegations by presenting testimony and documentary evidence from various sources, including (but not limited to) the following:

    a. <u>Customers of Able Temp Agency and Related Business Records</u>

Representatives from several companies are expected to testify that their companies used Able Temp Agency for temporary labor. These representatives are also expected to testify that they worked directly with the defendant as the representative of Able Temp Agency—the defendant was the point of contact and, after the work was complete, she provided invoices

and/or timesheets reflecting hours worked via email so that Able Temp Agency would get paid. All payments for Able Temp Agency labor were made via check to Able Temp Agency.

   b. Employees of Able Temp Agency and Related Tax Records

Several of the defendant's former employees are expected to testify that they worked for the defendant at Able Temp Agency on an hourly basis. The defendant instructed them where to work and would pay them based on hours worked. When paying her employees, the defendant would pay approximately 20 hours per week worth of wages by check at a rate of approximately minimum wage. The remaining wages were paid in cash at less than minimum wage. Each year the employees would receive an IRS Form W-2 from the defendant that reported only the wages the employees received via check and omitted the wages received in cash. These employees are expected to testify through a Vietnamese interpreter.

   c. Individual(s) who Provided Tax Preparation Services to Able Temp Agency

The defendant's adult daughter is expected to testify that she filed the IRS Forms 941 each quarter for Able Temp Agency at the defendant's direction. The defendant never told her daughter about the cash payroll and instead only provided her daughter information concerning the check payroll. The daughter therefore did not report the cash payroll on the IRS Forms 941. If the daughter had known about the cash payroll the daughter would not have submitted the IRS Forms 941 that reflected only the check payroll.

The defendant's corporate tax preparer may also testify that he did not file the IRS Forms 941 on behalf of Able Temp Agency. The defendant used the tax preparer to file Able Temp Agency's corporate tax returns (IRS Forms 1120). While the tax preparer did not file the IRS Forms 941 on behalf of Able Temp Agency, the tax preparer did advise the defendant of her obligation to pay taxes on all payroll to employees or, if the defendant employed contractors, of

her obligation to issue those contractors an IRS Forms 1099.  The defendant never filed or provided the tax preparer with any IRS Forms 1099.

      d.   <u>Representative of Travelers Insurance and Related Business Records</u>

The defendant used Travelers Indemnity Company as servicing carrier for Hartford Underwriters Insurance Company ("Travelers Insurance") to obtain workers' compensation insurance for Able Temp Agency.  A representative of Travelers Insurance is expected to walk through business records reflecting that the defendant applied for workers' compensation insurance on behalf of Able Temp Agency.  The application also stated that there were no other "wages" to Able Temp Agency "employees" and that Able Temp Agency did not use anyone other than an "employee" to perform work.  The representative is also expected testify, as reflected in business records, that Travelers Insurance calculated Able Temp Agency's premiums based on the payroll information the defendant provided.  Specifically, the defendant provided Travelers Insurance the same false IRS Forms 941 that the defendant previously caused to be submitted to the IRS.  The employee is also expected to testify about several emails received by Travelers Insurance from the defendant.

      e.   <u>Internal Revenue Service Agent(s)</u>

An IRS Revenue Agent is expected to describe what payroll taxes are and how payroll taxes are paid.  This will include, for example, an explanation of an employer's quarterly obligation to file IRS Form 941 and to pay payroll taxes on wages paid to employees.  The IRS Revenue Agent is also expected to walk through how IRS calculates tax loss on unreported payroll.

Additionally, IRS agents interviewed the defendant on several occasions.  During those interviews the defendant made several admissions.  For example, the defendant admitted that she had compensated her employees through cash payments and did not tell her daughter, who was

filing Able Temp Agency's IRS Forms 941, about those cash payments.  The government may call one of the IRS agents to testify about those interviews and the defendant's admissions.

    f.   <u>Bank Employees and Related Business Records</u>

One or more bank employees from one of the defendant's bank, Rockland Trust, is expected to testify about the bank's investigation into the defendant's substantial cash withdrawals.  As part of that process, Rockland Trust employees spoke to the defendant about the purpose and nature of her cash withdrawals.  Bank employees also memorialized certain conversations in emails that they circulated within Rockland Trust.

    g.   <u>Summary Financial Witness</u>

A summary financial witness from the U.S. Attorney's Office for the District of Massachusetts is expected to testify about her review of the voluminous business records (*e.g.*, bank records and timesheets, as well as records from the Internal Revenue Service and Massachusetts Secretary of State).  These records reflect that the defendant controlled Able Temp Agency's bank accounts and was the only person listed on Able Temp Agency's corporate filings.

Additionally, based on Able Temp Agency invoices and timesheets, which reflect employees' hours worked, as well as a review of Able Temp Agency bank records, the summary witness is expected to testify that Able Temp Agency had approximately $3 million in employee wages that were not reported on Able Temp Agency's IRS Forms 941 between in or about the last quarter of 2015 and the last quarter of 2019.  Able Temp Agency bank records also reflect approximately $3 million in cash withdrawals during that same period, and those withdrawals

appear to have been structured to avoid the filing of Currency Transaction Reports by the defendant's banks.[1]

II. Charges and Elements

Counts I through IV in the Indictment charge failure to collect or pay over taxes, in violation of Title 26, United States Code, Section 7202. The elements are:

(1) the defendant had a duty to collect, account truthfully for, or pay over an employment tax;

(2) the defendant knew she had a duty to collect, account truthfully for, or pay over an employment tax; and

(3) the defendant willfully failed to collect, account truthfully for, or pay over an employment tax.

Modern Federal Jury Instructions—Criminal, Eighth Circuit § 6.26.7202; *see also United States v. Brennick*, 908 F. Supp. 1004, 1015 (D. Mass. 1995); *United States v. Thayer*, 201 F.3d 214, 219–21 (3d Cir. 1999).

Count V in the Indictment charges mail fraud, in violation of Title 18, United States Code, Section 1341 (Count V). The elements are:

(1) there was a scheme, substantially as charged in the indictment, to defraud or to obtain money or property by means of false or fraudulent pretenses;

(2) the scheme to defraud involved the misrepresentation or concealment of a material fact or matter or the scheme to obtain money or property by means of false or fraudulent pretenses involved a false statement, assertion, half-truth or knowing concealment concerning a material fact or matter;

(3) the defendant knowingly and willfully participated in this scheme with the intent to defraud; and

---

[1] Under the Bank Secrecy Act, a bank is required to submit Currency Transaction Reports on all cash withdrawals of more than $10,000. *See* 31 U.S.C. 5313; 31 CFR § 1010.311. The defendant would sometimes make multiple cash withdrawals in short succession that were separately below that threshold but, if done at the same time, would have been above the threshold.

(4) for the purpose of executing the scheme or in furtherance of the scheme, the defendant caused the United States mail to be used, or it was reasonably foreseeable that for the purpose of executing the scheme or in furtherance of the scheme, the United States mail would be used, on or about the date alleged.

Pattern Criminal Jury Instructions for the First Circuit § 4.18.1341 (2022).

### III. Anticipated Evidentiary Issues

The government herein provides its position related to certain evidentiary issues that may arise during the trial.

#### a. Use of Grand Jury Transcripts

Several individuals on the government's witness list previously testified before a Grand Jury. That prior sworn testimony was transcribed and certified transcripts were produced to the defense. If any of those witnesses provides testimony at trial that is "inconsistent" with their prior Grand Jury testimony, then the transcript of their Grand Jury testimony may be admitted into evidence. Fed. R. Evid. 801(d)(1)(A) (prior sworn testimony that is inconsistent with trial testimony is not hearsay); *see also United States v. Hemmer*, 729 F.2d 10, 17 (1st Cir. 1984) (holding that where a government witness on direct examination "experienced memory lapses and gave testimony inconsistent with and contradictory to her grand jury testimony" the government was permitted to offer the witness's prior "grand jury testimony as substantive evidence").

Grand Jury testimony may also be offered by the government if the witness, after testifying "consistent" with their prior Grand Jury testimony, is attacked by the defendant's counsel on cross-examination on certain grounds. For example, the government may offer the prior Grand Jury testimony to "rebut an express or implied charge" that the witness "fabricated" or "acted from a recent improper influence or motive in so testifying," or "to rehabilitate the [witness's] credibility as a witness when attacked on another ground." Fed. R. Evid. 801(d)(1)(B)(i)-(ii); *see also Lech*

7

*v. von Goeler*, 92 F.4th 56, 68 (1st Cir. 2024); *United States v. Chiu*, 36 F.4th 294, 301 (1st Cir.), *cert. denied,* 143 S. Ct. 336 (2022) (requiring a showing that the witness was "impeached on the specific subject of the rehabilitative, prior consistent statement").

    b. <u>Summary Exhibits of Voluminous Records</u>

The government intends to call a summary financial witness from the U.S. Attorney's Office and, through her, admit summary exhibits of voluminous financial records (*e.g.*, Able Temp Agency invoices, timesheets, bank records, and tax records). These "summary tools" are admissible "to clarify complex testimony and evidence" under Rule 1006 of the Federal Rules of Evidence. *United States v. McElroy*, 587 F.3d 73, 81 (1st Cir. 2009); *see also United States v. Appolon*, 695 F.3d 44, 61-62 (1st Cir. 2012). Summary exhibits are admissible either individually or in addition to the underlying records. *United States v. Milkiewicz*, 470 F.3d 390, 396-97 (1st Cir. 2006) ("[W]hile in most cases a Rule 1006 chart will be the *only* evidence the fact finder will examine concerning a voluminous set of documents, in other instances the summary may be admitted *in addition to* the underlying documents to provide the jury with easier access to the relevant information.") (citations omitted). The government also intends to elicit testimony that describes and explains the summary exhibits. *McElroy*, 587 F.3d at 81 ("[S]ummary witness testimony may be permitted pursuant to Rule 611(a).") (citing *Milkiewicz*, 470 F.3d at 397–98 and *United States v. Stierhoff*, 549 F.3d 19, 27 (1st Cir. 2008)); *Appolon*, 695 F.3d at 63 (affirming introduction of summary witness testimony where testimony "was limited to introducing and explaining the summary charts [the summary witness] prepared").

    c. <u>Emails as Business Records</u>

The government intends to introduce in evidence emails between Rockland Trust employees regarding the defendant's cash withdrawals. These emails include correspondence

between bank personnel about the cash withdrawals as well as emails memorializing the substance of conversations between bank personnel and the defendant.

The emails are admissible because they are business records. The contents of emails may be admitted for the truth of the matter asserted provided the criteria of Rule 803(6) are satisfied. *See, e.g., United States v. Cone*, 714 F.3d 197, 220 (4th Cir. 2013) ("While properly authenticated e-mails may be admitted into evidence under the business records exception, it would be insufficient to survive a hearsay challenge simply to say that since a business keeps and receives e-mails . . . ."). To admit emails as business records, the government must demonstrate by a preponderance of the evidence that "the proffered record was (1) made at or near the time of the act or event recorded, (2) by—or from information transmitted by—someone with knowledge, (3) kept in the course of a regularly conducted activity of a business, and (4) made as part of the regular practice of that activity." *Ira Green, Inc. v. Military Sales & Serv. Co.*, 775 F.3d 12, 20 (1st Cir. 2014) (internal quotation marks omitted); *see also* Advisory Committee Notes, Fed. R. Evid. 803(6) ("The form which the 'record' may assume under the rule is described broadly as a 'memorandum, report, record, or data compilation, in any form.'"). Rule 803(6) does not necessarily require the proponent of a business record to offer the testimony of "the person who actually prepared the record." *Wallace Motor Sales, Inc. v. Am. Motors Sales Corp.,* 780 F.2d 1049, 1061 (1st Cir.1985). "The principal precondition to admission of documents as business records pursuant to Fed. R. Evid. 803(6) is that the records have sufficient indicia of trustworthiness to be considered reliable." *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 632-33 (2d Cir. 1994) (citation omitted). The government expects to lay this necessary foundation before seeking to introduce these emails between bank personnel.

Additionally, with respect to the emails between bank personnel involving the memorialization of telephone calls with the defendant, the content of these emails may be independently admissible as a "recorded recollection." Fed. R. Evid. 803(5). This may provide a separate basis for the admission of the content of those emails were the government to lay the proper foundation. Fed. R. Evid. 803(5) (government must establish by a preponderance of the evidence that the content "(A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; (B) was made or adopted by the witness when the matter was fresh in the witness's memory; and (C) accurately reflects the witness's knowledge"). Thereafter, "the record may be read into evidence" during the government's case-in-chief. *Id.*

    d.  <u>Defendant's Prior Statements and Statements of Third Parties for Necessary Context</u>

The government will seek to introduce certain statements by the defendant. These statements include, for example, statements the defendant made via email to her customer companies and her workers' compensation insurance company. The government may also admit statements the defendant made to IRS agents and bank tellers. While some of the defendant's statements may not be offered for their truth, the defendant's statements, if offered by the government for their truth, are non-hearsay because they are statements of a party opponent. Fed. R. Evid. 801(d)(2)(A).

The government may also introduce the statements of third parties who were speaking with the defendant. Evidence is not hearsay if offered for the limited purpose of providing "background" or "context." *See, e.g.*, *United v. Page*, 521 F.3d 101, 106 (1st Cir. 2008); *United States v. Catano*, 65 F.3d 219, 225 (1st Cir. 1995) (defendant's part of conversations admissible as non-hearsay admissions of a party and cooperator's part of the conversations admissible to place admissions into context and make them intelligible to the jury); *United States v. Castro-Lara*, 970

F.3d 976, 981 (1st Cir. 1992). The same principle applies to oral or written statements that pose questions, issue instructions, or make suggestions, because such expressions are not offered for the truth of their contents but instead to provide context for the defendant's response (or lack of response). *See, e.g., United States v. Vest*, 842 F.2d 1319, 1330 (1st Cir. 1988) (noting that a question is not hearsay); *United States v. Murphy*, 193 F.3d 1, 5 (1st Cir. 1999) (same, for instructions).

    e. <u>Defendant May Not Introduce Her Own Prior Statements</u>

Unlike the government, the defendant may not offer or elicit her own prior statements at trial because those statements are hearsay. *United States v. Rivera-Hernandez*, 497 F.3d 71, 80 (1st Cir. 2007) (citing Fed. R. Evid. 801, 802). The defendant is not permitted to circumvent this rule by eliciting the defendant's statements through the cross-examination of other witnesses. *United States v. Bauzo-Santiago*, 49 F. Supp. 3d 155, 157 (D.P.R. 2014) (prohibiting defendant from eliciting defendant's "out-of-court statement during cross-examination of government witnesses to impeach the witnesses") (citing *Bemis v. Edwards*, 45 F.3d 1369, 1372 (9th Cir. 1995) and *United States v. Hudson*, 970 F.2d 948, 956 (1st Cir. 1992)). Further, merely because the government presents only a subset of the defendant's out-of-court statements, the defendant is not entitled to present their other statements absent a need to avoid "misunderstanding or distortion." *United States v. Simonelli*, 237 F.3d 19, 28 (1st Cir. 2001) (rule of completeness "does not permit the admission of otherwise inadmissible evidence simply because one party has referred to a portion of such evidence, . . . rather, it operates to ensure fairness where a misunderstanding or distortion created by the other party can only be averted by the introduction of the full text of the out-of-court statement").

                    Respectfully submitted,

                    JOSHUA S. LEVY
                    Acting United States Attorney

By:    */s/ Christopher J. Markham*
        CHRISTOPHER J. MARKHAM
        KRISTEN A. KEARNEY
        Assistant United States Attorneys

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                    */s/ Christopher J. Markham*
                    CHRISTOPHER J. MARKHAM
                    Assistant United States Attorney

Date: March 25, 2024